IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LINDA S. HAIRE, | ) | CASE NO. 8:04CV449 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM AND ORDER |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on the denial, initially and on reconsideration, of the Plaintiff's disability insurance ("disability") benefits under the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, and supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383. The Court has carefully considered the record and the parties' briefs.

**PROCEDURAL BACKGROUND**

The Plaintiff, Linda S. Haire, filed her initial applications for Disability and SSI benefits on January 30, 2003. (Tr. 42-44, 181-84.) The claims were denied initially (Tr. 25-26, 185) and on reconsideration (Tr. 27-28, 191). An administrative hearing was held before Administrative Law Judge ("ALJ") James E. Russ on May 5, 2004. (Tr. 205-31.) On June 9, 2004, the ALJ issued a decision finding that Haire was not "disabled" within the meaning of the Act and therefore is not eligible for either disability or SSI benefits. (Tr. 16-17.) On August 31, 2004, the Appeals Council denied Haire's request for review. (Tr. 4-6.) Haire now seeks judicial review of the ALJ's determination as the final decision of the Defendant, the Commissioner of the Social Security Administration ("SSA"). (Filing No. 1.)

Haire claims that the ALJ's decision was incorrect because the ALJ failed to apply the law of the Eighth Circuit Court of Appeals by not requiring testimony of a vocational expert before determining that the commissioner met her burden of proving that Haire has the residual functional capacity to perform work activity.

Upon careful review of the record, the parties' briefs and the law, the Court concludes that the ALJ's decision denying benefits is supported by substantial evidence on the record as a whole. Therefore, the Court affirms the Commissioner's decision.

## FACTUAL BACKGROUND

Haire is now forty-four years old. (Tr. 42.) She describes her education level as "10th grade." (Tr. 209.) Haire's most recent occupational experiences include work as a waitress, cook and food service worker. (Tr. 209.) Since September 10, 2002, Haire has not engaged in any substantial gainful employment. (Tr. 16.)

### *Haire's Testimony*

At the hearing, Haire testified as to her education level and previous employment experiences. She testified that she worked as a waitress, cook and in food service since she was twelve years old. (Tr. 209.) For several years, Haire was a truck stop waitress. (Tr. 109-10.) Most recently, Haire worked for a business that is both a barbeque bar and a catering service. (Tr. 210.) Haire testified to the physical demands of waitressing. (Tr. 210-11.) She stated that she had no difficulty with the physical aspects of the job until she was in a car accident on September 10, 2002. (Tr. 211.) Haire described her injuries as a result of the accident: a broken neck; head gash; split spleen; broken foot; and problems in her lower and mid-back. Primarily, Haire complains of problems stemming from her neck injury. (Tr. 212.)

Haire testified that, after the accident, she did not work at all for three months. She then tried to work four-hour days beginning in December 2002 at the suggestion of her neurosurgeon, Michael J. Giordano, M.D. (Tr. 213-14.) Haire testified that after about ninety minutes she had difficulty standing and walking. (Tr. 214.) Haire stated that Dr. Giordano told her to try three hours or less work per day. She testified that at that time she could not even lift ten pounds, and if she tried to lift more she experienced shooting pain. (Tr. 215.) Haire stated that she had trouble lifting, especially items from a shelf, and she needed to request help from other employees. (Tr. 216.) Haire stated that, on Dr. Giordano's advice, she quit her job. She stated that she tried doing computer work for two or three months at a trucking firm, but she was unable to sit and hold her head in the required position for more than two or three hours. (Tr. 218-19.) Haire testified that she had to lie down after working, and that she was taking Darvocet for pain at least two or three times per week. Haire stated that her last day performing any type of work was in August 2003. (Tr. 220-21.)

Haire testified that, at the time of the hearing, she could not lift any weight at all, including even a grocery bag or laundry basket. Haire lives with her daughter,[1] who performs all of the household chores. (Tr. 221, 223.) Haire testified that she experienced pain, i.e., a tight neck, after sitting and testifying at the hearing for fifteen minutes. She also stated that she experienced that type of pain on an ongoing basis. She stated that she had pain after sitting at most for thirty minutes. (Tr. 222.) At the time of the hearing, Haire stated that she could not stand for a long period of time, walk any distance, use her hands

---

[1] Haire's daughter also works and has an infant daughter who goes to daycare.

on a repetitive basis, or drive more than forty-five minutes. Haire stated that she "basically sit[s]" and had no daily activities. (Tr. 223, 226.) Haire stated that any sustained activity for more than one or two hours would result in pain, and she then needed to lie down and take Darvocet. (Tr. 226.)

***Documentary Evidence Before the ALJ***

In addition to oral testimony, the ALJ considered medical evidence. The record shows that on September 10, 2002, Plaintiff was involved in a single car motor vehicle accident in which she sustained a ruptured spleen, C6-7 fracture dislocation, large scalp laceration, and nondisplaced medial malleolar fracture of the right ankle. (Tr. 132, 136.) Haire underwent posterior cervical reduction of fracture with allograft and an anterior cervical diskectomy with fusion plating and autograft, as well as a repair of the scalp laceration. (T. 136-37.) Postoperatively, Plaintiff was very stable, and her scalp laceration healed without any problems. Her right ankle fracture was treated with a splint. On September 16, 2002, Haire was discharged and given a prescription of Darvocet for pain (Tr. 137).

On October 8, 2002, Plaintiff saw Spencer D. Greendyke, M.D., at the Center for Neurosciences, Orthopaedics, and Spine, P.C. ("CNOS"). Haire reported that she had no discomfort in her right ankle, and she was non-tender to palpation with full range of motion and 5+/5 motor strength. X-rays of the ankle showed excellent alignment. The doctor placed Haire in an air cast and discontinued her Cam walker. (Tr. 170.)

Haire returned to CNOS on October 17, 2002. She saw Dr. Giordano, who noted that she was doing very well. She complained of some stiffness in her left upper trapezius region, but she had no difficulty with pain in her arms and minimal pain in her neck. She

had full strength in her upper extremities with no limitation of her range of motion. Cervical spine x-rays showed placement of the anterior cervical plate without difficulty. The C-7 pedicle screw was in the very top of the neural foramen and was a little low. Haire denied any radiating pain down into her arms, so the screw placement was deemed "probably okay for now." (Tr. 169). Dr. Giordano noted that if Haire developed any radicular pain due to the screws, they would be removed. The doctor recommended formal physical therapy for neck strengthening and stretching. (Tr. 169.)

On November 12, 2002, Dr. Giordano reported that Plaintiff was doing well, had reduced stiffness in her neck with physical therapy, had no difficulty with pain or arm numbness, and had full strength in her upper extremities. X-rays of the cervical spine showed no movement in flexion and extension. The doctor stated that Haire was doing well, and he was pleased with her progress. Haire told him that she wanted to return to work on December 1, 2002. Dr. Giordano stated that she could return to work then if she worked four-hour days, noting that she had a twenty-pound lifting restriction. (Tr. 168.)

On January 14, 2003, Haire returned to CNOS and reported that she continued to do relatively well. (Tr. 167.) She was working four-hour days, but by the end of her shift she experienced an aching sensation in the base of her neck area. She continued to do home physical therapy and neck strengthening. Haire reported feeling some weakness in her right arm, but she had no pain in either arm. On examination, Haire had full strength in the full length of both arms. Cervical x-rays showed no movement in flexion or extension. Dr. Giordano noted that Plaintiff was doing well, and he continued to recommend that she work four-hour days. He also said that he was willing to fill out any

5

disability forms that Haire needed to help her supplement her income while she was working half days.  (Tr. 167.)

On March 13, 2003, Dr. Giordano noted that Plaintiff had done relatively well. Although she was not experiencing any numbness, she complained of some posterior left medial scapular pain which occasionally radiated down her left arm.  She reported that after taking it easy for a couple of days, such as a weekend, she felt much better by Monday morning.  Dr. Giordano opined that the most likely cause of her pain was the trauma and extensive surgery.  The doctor recommended physical therapy for the next six weeks and stated that she could continue working limited days.  (Tr. 166.)  Dr. Giordano completed a prescription form in which he requested that Plaintiff be allowed to work less than four hours per day if possible.  (Tr. 165.)

On May 15, 2003, Haire returned to CNOS and saw G. Barrie Purves, M.D., in Dr. Giordano's absence.  Haire complained primarily of axial pain in her shoulders, neck, and interscapular region which became worse later in the day.  She also reported being quite stiff first thing in the morning.  Activities such as chopping vegetables or trying to lift even light things aggravated her axial pain.  She did not complain of symptoms extending down her arms.  Dr. Purves stated that he believed Plaintiff would have to live with her limitations, noting that she had good strength and range of movement.  The doctor believed that Haire could progress to a "pretty good level of activity."  (Tr. 164.)

On July 29, 2003, Haire again saw Dr. Giordano.  Haire had undergone a CT myelogram to check her screws at C8.  One of the C8 screws on the left was near, but not impinging on, the nerve root.  Haire denied any radicular pain in her arms.  Her main complaint was that of chronic neck pain and stiffness since her surgery.  Dr. Giordano told

Haire that, given the extensive fusion, she would likely always have limitation of flexion and rotation. He explained that the fusion was needed to protect her cervical spinal cord and prevent quadriplegia. Haire had normal strength in her upper extremities, but she had a definite decreased range of motion on rotation and flexion. The doctor stated that he thought Haire had permanent disability, and that it was very difficult for her to be a waitress or even to do catering with repetitive chopping and lifting. Dr. Giordano stated that Plaintiff needed to obtain permanent disability from the Social Security Administration, and accordingly he would order a functional capacity evaluation. (Tr. 171-72.)

On January 5, 2004, Dr. Giordano completed a functional capacities evaluation. (Tr. 174-76.) The evaluation states that, in an eight-hour workday, Haire could: sit for four hours; stand for two hours; and walk for two hours. He stated that she could occasionally bend or stoop, squat, climb, reach above shoulder level, crouch, kneel, balance, and push or pull. He advised that she could: not crawl; frequently lift up to ten pounds; occasionally lift between eleven and thirty-four pounds; never lift more than 34 pounds; continuously use either and both feet for repetitive movements such as in operating foot controls; use either and both hands for repetitive action such as simple grasping, firm grasping, and fine manipulation; and could use her head and neck in a neutral position but not in frequent flexing or fine manipulating. Dr. Giordano noted Haire's very limited rotational and extension movement of her head and neck. (Tr. 174.)

On February 26, 2004, Dr. Giordano saw Haire for a follow-up evaluation. He noted that she had done well after her fusion. Overall, however, she had continued neck pain when doing any type of standing or lifting. She tried computer work and some short waitress work but could not work without "pretty much disabling" pain. (Tr. 173.) Haire did

7

not feel that she could work. Dr. Giordano agreed, stating that Haire "for all intensive [sic] purposes, is 100% disabled from the work force" and should "be considered 100% disabled for social security disability reasons." (Tr. 173.)

## THE ALJ'S DECISION

The ALJ found that Haire was not "disabled" pursuant to her application for disability benefits under Disability or SSI benefits under Title XVI benefits. (Tr. 17.) The ALJ followed the sequential evaluation process set out in 20 C.F.R. §§ 404.1520 and 416.920[2] to determine whether Haire was disabled, considering "whether [Haire] retains the residual functional capacity, despite her impairments, to engage in substantial gainful activity." (Tr. 14.)

Following this analysis, the ALJ found that Haire is not disabled. (Tr. 17.) Specifically, at step one the ALJ found that Haire has not performed any substantial gainful work activity since September 10, 2002. (Tr. 13, 16.) At step two, the ALJ found that Haire has two medically determinable impairments: status post cervical fracture (C6-7) with fusion with continuing neck pain; a history of a nondisplaced ankle fracture that has been resolved. (Tr. 14.) At step three, the ALJ found that Haire's medically determinable impairments, either singly or collectively, do not meet section 12.04 or any other section of Appendix 1 to Subpart P of the Social Security Administration's Regulations No. 4, known as the "listings." (Tr. 13-14.) At step four, the ALJ determined that Haire is unable to perform her past relevant work as a waitress, cook, or bartender. At step five, the ALJ determined that the Commissioner has shown, through application of the medical

---

[2]Section 404.1520 relates to disability benefits, and identical § 416.920 relates to SSI benefits. For simplicity, further references will only be to § 404.1520.

8

vocational guidelines, that given Haire's age, education, work experience, and residual functional capacity, she possesses the residual functional capacity to engage in sedentary work that exists in the national economy with the following limitations: lifting and carrying up to ten pounds occasionally and frequently; standing or walking six hours in a workday; no repetitive forceful twisting, pushing or pulling with both upper extremeties; and no overhead work with either upper extremity. (Tr. 16, 17.) In reaching his decision, the ALJ weighed Haire's testimony, finding the testimony not credible with respect to Haire's allegations of severe pain and limitations. The ALJ reasoned that the record does not support Haire's testimony. (Tr. 17.) The ALJ also carefully considered the medical records and opinions submitted by her treating physicians. (Tr. 15.) The ALJ, however, gave little weight to Dr. Giordano's opinion that Haire is 100% disabled, as that conclusion is to be made by the Commissioner.

## STANDARD OF REVIEW

In reviewing a decision to deny disability benefits, a district court does not reweigh evidence or the credibility of witnesses or revisit issues *de novo*. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995); *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir. 1995). Rather, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and, if so, to affirming that decision. *Harris,* 45 F.3d at 1193.

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir. 2001). The Court must consider evidence that both detracts from, as well as supports, the Commissioner's decision. *Id.*; *Morse v. Shalala,* 16 F.3d 865, 870

(8th Cir. 1994). As long as substantial evidence supports the Commissioner's decision, that decision may not be reversed merely because substantial evidence would also support a different conclusion or because a district court would decide the case differently. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000); *Harris,* 45 F.3d at 1193.

## DISCUSSION

### "DISABILITY" DEFINED

An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be of such severity that the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). If the claimant argues that he has multiple impairments, the Act requires the Commissioner to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B).

### SEQUENTIAL EVALUATION

In determining disability, the Act follows a sequential evaluation process. *See* 20 C.F.R. § 404.1520. In engaging in the five-step process, the ALJ considers whether: 1) the claimant is gainfully employed; 2) the claimant has a severe impairment; 3) the impairment meets the criteria of the "listings"; 4) the impairment prevents the claimant from performing

past relevant work; and 5) the impairment necessarily prevents the claimant from doing any other work. *Id.* If a claimant cannot meet the criteria at any step in the evaluation, the process ends and the determination is one of no disability. *Id.*

In this case, the ALJ completed all five steps in the evaluation process, concluding that Haire is not disabled and has the residual functional capacity to perform sedentary work with certain limitations.

### COMMISSIONER'S BURDEN

Haire argues that the ALJ erred in concluding that the Commissioner met her burden of proving that she is capable of substantial gainful activity without calling a vocational expert.

Once it is established that a claimant cannot perform her past relevant work, the burden shifts to the Secretary to show that there are other jobs that the claimant can realistically perform, given characteristics such as the claimant's age, education and work experience, that are available in the national economy. *Gray v. Apfel,* 192 F.3d 799, 802 (8th Cir. 1999). In cases that do not involve nonexertional impairments such as pain, the Secretary may meet this burden by use of the medical-vocational guidelines, or "grid." *Id.* Similarly, if the ALJ discredits the claimant's subjective complaints including pain for legally sufficient reasons, the Secretary may satisfy her burden at step five of the inquiry by use of the medical-vocational guidelines and need not present vocational expert testimony. *Reynolds v. Chater,* 82 F.3d 254, 257 (8th Cir. 1996). Only when a claimant has a nonexertional impairment such as pain that has not been discredited does the testimony of a vocational expert become necessary. *Gray,* 192 F.3d at 802.

Turning to Haire's case, the ALJ properly found Haire's testimony not credible. Haire did not argue that the ALJ's credibility finding was incorrect, and therefore the Court considers that issue as waived. Rather, Haire's sole argument is that the Secretary must always present vocational expert testimony with respect to step five of the inquiry. In her brief, Haire relies on *Tucker v. Schweiker,* 689 F.2d 777 (8th Cir. 1982) as support for her argument. However, the Court finds that the *Tucker* opinion supports the Commissioner's position. The *Tucker* court reversed and remanded the case for further evidentiary proceedings specifically to develop the record with respect to the claimant's mental impairments and subjective complaint of pain, as well as a credibility determination with respect to the claimant's nonexertional complaints of pain. *Id.* at 780-81. Because the record was insufficient, the Eighth Circuit was unable to reach the issue relating to the manner in which the Secretary met the burden with respect to step five of the inquiry. *Id.* at 781. In fact, in the Eighth Circuit's opinion on remand, the court concluded: substantial evidence in the record as a whole supported the ALJ's finding that the claimant's nonexertional impairments did not diminish the claimant's exertional capabilities; and therefore 2) the ALJ did not err in relying on the medical-vocational guidelines in concluding that the claimant was not disabled. *Tucker v. Heckler,* 776 F.2d 793, 795 (8th Cir. 1985). In other words, the latter *Tucker* opinion directly supports the Commissioner's position in Haire's case.

Haire's testimony, including her subjective complaints of pain, was found not to be credible. That issue was not contested in this appeal, and the Court finds that substantial evidence on the record as a whole supports the ALJ's credibility finding. Therefore, in

12

meeting her burden with respect to step five, the Commissioner may rely in this case solely on the medical-vocational guidelines, and vocational expert testimony was not necessary.

## CONCLUSION

For the reasons discussed, the Court concludes that the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

IT IS ORDERED that the decision of the Commissioner is affirmed, the appeal is denied, and judgment in favor of the Defendant will be entered in a separate document.

DATED this 19th day of July, 2005.

BY THE COURT:

S/Laurie Smith Camp
United States District Judge